**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ROBIN L. ALVARES, } | |
| } | |
| Plaintiff, } | No. 05-320 Erie |
| vs. } | Judge McLaughlin |
| } | Magistrate Judge Baxter |
| EDINBORO UNIVERSITY OF PENNSYLVANIA, } | |
| } | **Electronically Filed** |
| Defendant. } | |

**BRIEF IN SUPPORT OF
<u>DEFENDANT'S MOTION TO DISMISS COMPLAINT</u>**

**I. <u>Statement of the Case</u>**

Plaintiff, Robin L. Alvares ("Alvares"), has filed the instant action against her employer, Edinboro University ("the University"), therein alleging violations of her employment and civil rights, as well as violations of state law. Alvares was hired by the University in 1999 as an Assistant Professor on a tenure track in the University's Department of Speech and Communications Studies. Alvares was denied tenure in 2004. In this action, Alvares claims violations of Title VII (42 U.S.C. §§ 2000e *et seq.*) of the Civil Rights Act of 1964 (Count I), the Fourteenth Amendment (Count III) and Pennsylvania's Human Relations Act (Count II) and Equal Rights Amendment (Count IV). <u>See</u> Complaint, <u>generally</u>.

Particularly, Alvares alleges that a male colleague on the University's faculty apparently provided false information about her qualifications to persons involved in the tenure process, which had the effect of undermining her tenure decision to the point where she was denied tenure and her employment with the University was terminated. <u>See</u> Complaint, at ¶¶ 11-19. The University now moves to dismiss because the allegations of the Complaint fail to state a cause of action under Title VII at Count I and because the claims advanced by the remaining counts of the Complaint are barred by the Eleventh Amendment.

## II. Standard of Review

Pursuant to Fed.R.Civ.P. Rule 12(b)(6), "[t]he court will not dismiss a complaint for failure to state a claim unless it appears beyond a doubt that 'no relief could be granted under any set of facts that could be proved consistent with the allegations.'" Mincy v. Chmielewski, 2005 WL 3434009, *2 (M.D.PA Dec. 13, 2005)(quoting Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002)). See also Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). The issue is not whether the plaintiff will prevail at the end but only whether he should be entitled to offer evidence to support his claim. See Neitzke v. Williams, 490 U.S. 319 (1989); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

The complaint must be read in the light most favorable to the plaintiff and all well-pleaded, material allegations in the complaint must be taken as true. See Estelle v. Gamble, 429 U.S. 97 (1976). "However, a court need not credit either 'bald assertions' or 'legal conclusions' in a complaint when deciding a motion to dismiss." Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005)(quoting In re Burlington Coat Factory Securities Litigation, 114 F.3d 1410, 1429-1430 (3d Cir. 1997)(internal citation omitted)).

## III. Argument

### A. The allegations at Count I of Alvares' Complaint do not sufficiently state a claim of gender discrimination under Title VII.

Alvares apparently complains that she was not granted tenure because of her gender. It appears that Alvares is basing her claim upon a theory of disparate treatment, rather than disparate impact.[1] The by now familiar analysis to be used for claims of disparate treatment

---

[1] "[T]he two theories differ in that the former is directed to the discriminatory motive underlying the 'treatment' of minorities whereas the latter focuses upon the 'outcome' regardless of how benign the motive underlying the treatment of minorities might have been." Wilmore v. Wilmington Firefighters Local 1590, 699 F.2d 667, 671 (3d Cir. 1983). Thus, a claim proceeding under a theory of disparate impact must necessarily allege that the "application of a

2

under, *inter alia*, Title VII was developed by the United States Supreme Court in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973), and further refined in <u>Texas Department of Community Affairs v. Burdine</u>, 450 U.S. 248, 252-253 (1981):

> 'First, the plaintiff has the burden of proving by the preponderance of the evidence a *prima facie* case of discrimination. Second, if the plaintiff succeeds in proving the *prima facie* case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'

<u>Sherrod v. Philadelphia Gas Works</u>, 209 F.Supp.2d 443, 449 (E.D.Pa. 2002)(<u>quoting</u> <u>Burdine</u>, 450 U.S. at 252-253 (<u>citing</u> <u>McDonnell Douglas</u>, 411 U.S. at 802)). <u>See</u>, <u>e.g.</u>, <u>Fuentes v. Perskie</u>, 32 F.3d 759, 763 (3d Cir. 1994) <u>and</u> <u>Ezold v. Wolf, Block, Schorr & Solis-Cohen</u>, 983 F.2d 509, 522-523 (3d Cir. 1992).

Usually, a "[p]laintiff's theory of disparate treatment must be supported by a demonstration that she has suffered from some adverse employment action and that such action was a purposeful or intentional discrimination on the basis of her gender…. [I]f plaintiff can show that similarly situated non-minority employees were treated differently than she, one reasonably could conclude that she has established her *prima facie* case." <u>Byrnes v. Herion, Inc.</u>, 757 F.Supp. 648, 651 (W.D.Pa. 1990)(citations omitted). <u>See also</u> <u>Roebuck v. Drexel University</u>, 852 F.2d 715, 726 (3d Cir. 1988)(<u>citing</u> <u>McDonnell Douglas</u>, 411 U.S. at 802).

---

facially neutral standard has resulted in a significantly discriminatory hiring [or promotional] pattern." <u>See</u> <u>Lanning v. Southeastern Pennsylvania Transportation Authority (SEPTA)</u>, 181 F.3d 478, 485 (3d Cir. 1999)(<u>citing</u> <u>Dothard v. Rawlinson</u>, 433 U.S. 321, 329 (1977)). <u>See also</u> <u>Foster v. New Castle Area School District</u>, 98 Fed.Appx. 85, 89 (3d Cir. 2004)(plaintiff "must initially show that a facially neutral policy results in a discriminatory hiring pattern"). Here, Alvares has made no such allegation.

Thus, the following elements of a claim for discrimination under Title VII emerge: a plaintiff must show that: (1) she was a member of the protected class; (2) she was qualified for the position; (3) she was discharged; and (4) similarly situated employees who are not members of the protected class were treated more favorably. See, e.g., Goosby v. Johnson & Johnson Medical, Inc., 228 F.3d 313, 318-319 (3d Cir. 2000)(cited in Williams v. URS Corp., 124 Fed.Appx. 97, 99 (3rd Cir. 2005) and Taylor v. Potter, 146 Fed.Appx. 570, 571 (3rd Cir. 2005)).

However, Alvares need not establish a *prima facie* case at this point in the proceedings. Indeed, in Swierkiewicz v. Sorema N. A., 534 U.S. 506 (2002), the Supreme Court rejected the notion that a complaint in an employment discrimination lawsuit must include the specific facts which establish a *prima facie* case of discrimination under the McDonnell Douglas framework. Instead, the Court "h[e]ld that an employment discrimination complaint … must contain only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" Id., 534 U.S. at 508 (quoting Fed. Rule Civ. Proc. 8(a)(2)). Nevertheless, Swierkiewicz "did not even remotely suggest that a pleading could survive dismissal when it consisted of only the barest of conclusory allegations without notice of the factual grounds on which they purport to be based." See Jackson v. BellSouth Telecommunications, 372 F.3d 1250, 1271 (11th Cir. 2004).

Instantly, Alvares has not presented any allegations to suggest that the University treats females less favorably than males in making tenure decisions, or that it specifically did so in this case. In summary, the complaint alleges that Alvares, a female, was denied tenure after a male faculty member, Dennis Lutz, who was also seeking tenure from the University,[2] met with two other males involved in the tenure process. Plaintiff makes no allegation regarding the substance

---

[2] Plaintiff's appellation of this individual as a "tenure track competitor" is a misnomer. They were not "competing" for the same tenured position nor is it alleged anywhere in the Complaint that they were.

4

of this discussion. Nevertheless, the Complaint implies that Lutz provided false information that negatively impacted Alvares' tenure decision. Alvares was ultimately denied tenure. Accordingly, the essence of the Complaint is that Lutz –in violation of University rules and regulations– provided individuals in the tenure process with false information about Alvares and that Alvares' tenure decision was ultimately predicated on this false information.

However, apart from the fact that she is a woman and Lutz is a man, there are no allegations concerning the role played by Alvares' gender in this episode. Presumably Alvares would be just as offended and aggrieved if the conduct attributed to Lutz had been committed by a female colleague. Yet, in either instance, Title VII would not be implicated absent some further (even conclusory) allegation that Alvares' (or Lutz') gender played some part in the complained of conduct. Thus, missing from Alvares' Complaint is the critical element of a gender discrimination claim under Title VII, i.e., that similarly situated employees who are not members of the protected class were treated more favorably. Indeed, despite allegations that the University allowed "a lesser qualified competing male seeking tenure to meet with Department Tenure Committee and University Wide Tenure Committee and apparently provide information about plaintiff, a tenure competitor" and allowed "the Department Tenure Committee, which was all male, to deploy uneven standards in making its tenure recommendation of a lesser qualified male over plaintiff, a better qualified female,"[3] Alvares does not assert that a man, Lutz, was ultimately treated more favorably by being awarded tenure.

Nor does she allege anywhere in her Complaint that she was denied tenure by the University because of her gender. In fact, the specific allegation in the Complaint is that she was denied tenure because Lutz provided false information about her to the tenure committee. See

---

[3] See Complaint, at ¶¶ 20B and 20C.

Complaint, at ¶ 16 ("The false information which had been provided to the Tenure Committee was instrumental in securing plaintiff's negative recommendation by the Tenure Committee"). Moreover, even if it were true that Lutz provided false information that affected Alvares' tenure decision, it does not follow –absent any allegation to such effect– that either Lutz' actions in providing this false information or the University's decision to deny tenure based on this false information were motivated in any way by Alvares' gender.

Perhaps if it were alleged in the Complaint that Lutz had received tenure at Alvares' expense –that the tenure Alvares sought was given instead to Lutz– then a claim of gender discrimination could conceivably be made out on the allegations of the Complaint.  However, no such allegation is made.  Rather, the only allegation in this regard is that Lutz received a *recommendation for his* tenure from the Department Chair and Alvares did not *for hers*.  See Complaint, at ¶¶ 13, 20A.  Yet, critically, there is no allegation that Lutz was *ultimately granted* tenure by the University –at Alvares' expense or otherwise.  Thus, particularly where there is no other allegation that any action taken by Lutz or the University was motivated by Alvares' gender, the absence of an allegation that Lutz by his actions succeeded in securing his own tenure is fatal to the present claim.  Alvares has not sufficiently alleged a claim of gender discrimination under Title VII and, consequently, Count I of her Complaint must be dismissed. Cf. Walters v. Norton, 2004 WL 3048852, *2 (D.V.I. 2004)(allegations that younger, Caucasian male with less experience was given the job were sufficient to withstand defendant's motion to dismiss for failure to state a claim) and Marshall v. National Association of Letter Carriers Branch 36, 2003 WL 223563, *8 (S.D.N.Y. 2003)( Plaintiff's failure to allege that discipline was imposed on the basis of his race required dismissal of claim).  See also O'Connor v. Northshore International Insurance Services, 61 Fed.Appx. 722 (1st Cir. 2003).

### B. As an arm of the Commonwealth of Pennsylvania, the Defendant enjoys immunity from several counts of the instant suit under the Eleventh Amendment to the United States Constitution.

The University asserts that the remaining portions of the present action are barred by the Eleventh Amendment to the United States Constitution, which provides as follows:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const., Amend. XI.

Notwithstanding this specific text, this Amendment has been construed, historically, to confer immunity to the States not just against suits by citizens of another State, but also against suits by its own citizens. See Tennessee Student Assistance Corporation v. Hood, 541 U.S. 440, 446 (2004). Indeed, the Supreme Court "has long '"understood the Eleventh Amendment to stand not so much for what it says, but for the presupposition ... which it confirms."' Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 54, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996)(quoting Blatchford v. Native Village of Noatak, 501 U.S. 775, 779, 111 S.Ct. 2578, 115 L.Ed.2d 686 (1991)).

> Accordingly, for over a century now, we have made clear that the Constitution does not provide for federal jurisdiction over suits against nonconsenting States. College Savings Bank v. Florida Prepaid Postsecondary Ed. Expense Bd., 527 U.S. 666, 669-670, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999); Seminole Tribe, supra, at 54, 116 S.Ct. 1114; see Hans v. Louisiana, 134 U.S. 1, 15, 10 S.Ct. 504, 33 L.Ed. 842 (1890).

Kimel v. Florida Board of Regents, 528 U.S. 62, 72-73 (2000).

Pennsylvania has not consented to suit in the federal courts, as evidenced by its express legislative action. Particularly, 42 Pa. C.S. § 8521(b) reads as follows:

7

>(b) Federal courts.--Nothing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in Federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States.

42 Pa. C.S. § 8521(b).  See 1 Pa. C.S. § 2310 (relating to Sovereign immunity reaffirmed; and requiring a specific waiver of such immunity).  See also Chittister v. Department of Community and Economic Development, 226 F.3d 223, 226 (3d Cir. 2000).

While the instant action is not being brought against the State itself, it is well settled that "[t]he eleventh amendment's bar extends to suits against departments or agencies of the state having no existence apart from the state."  Laskaris v. Thornburgh, 661 F.2d 23, 25 (3d Cir. 1981)(citing Mt. Healthy City Board of Education v. Doyle, 429 U.S. 274, 280 (1977)).  See also Bazargani v. Haverford State Hospital, 90 F.Supp.2d 643 (E.D.Pa. 2000)(citing Laskaris) and Coxson v. Commonwealth of Pennsylvania, 935 F.Supp. 624, (W.D.Pa. 1996)(same).  The question, therefore, is whether Edinboro University is an "arm of the state" such that the protections afforded by the Eleventh Amendment benefit it as well.  See Mt. Healthy, supra.

Edinboro University of Pennsylvania is a part of the State System of Higher Education ("SSHE"), which in turn is part of the Commonwealth's system of higher education.[4]  See 24 P.S. §§ 20-2002-A.  It is undisputed that under state law SSHE is considered to be an agency of the Commonwealth government.  Cooper v. Pennsylvania State Athletic Conference, 841 A.2d 638, 640 (Pa. Cmwlth. 2004).  It is equally settled state law that each of the constituent universities of the SSHE are also themselves considered to be agencies of the Commonwealth.  East Stroudsburg University v. Hubbard, 591 A.2d 1181, 1184 (Pa. Cmwlth. 1991).  See also

---

[4] Its enabling legislation states that SSHE "shall be part of the Commonwealth's system of higher education.  Its purpose shall be to provide high quality education at the lowest possible cost to the students."  See 24 P.S. § 20-2003-A(a).

8

Pearson v. Unemployment Compensation Board of Review, 689 A.2d 352, 357 n. 6 (Pa. Cmwlth. 1997)(citing cases).

In O'Hara v. Indiana University of Pennsylvania, 171 F.Supp.2d 490 (W.D.Pa. 2001), current Chief District Judge Ambrose was confronted with the issue of whether another of the System's constituent schools enjoyed the protection from a Section 1983 civil rights suit provided by the Eleventh Amendment. Judge Ambrose first noted that the Third Circuit had previously addressed this same issue in Skehan v. State System of Higher Education, 815 F.2d 244 (3d Cir. 1987), observing that

> the Third Circuit concluded that the trial court had properly decided that 'the State System is, effectively, a state agency and therefore entitled to the protection of the Eleventh Amendment in the federal court.' Skehan, 815 F.2d at 249.
>
> The Skehan Court applied the test originally defined in Urbano v. Board of Managers of New Jersey State Prison, 415 F.2d 247, 250-51 (3d Cir.1969), cert. denied, 397 U.S. 948, 90 S.Ct. 967, 25 L.Ed.2d 128 (1970), as the appropriate criteria for district courts to apply in determining whether an agency possesses sufficient state attributes to warrant the protections of the Eleventh Amendment:
>
>> Local law and decisions defining the status and nature of the agency involved in its relation to the sovereign are factors to be considered, but only one of a number that are of significance. Among the other factors, no one of which is conclusive, perhaps the most important is whether, in the event plaintiff prevails, the payment of the judgment will have to be made out of the state treasury; significant here also is whether the agency has the funds or the power to satisfy the judgment. Other relevant factors are whether the agency is performing a governmental or proprietary function; whether it has been separately incorporated; the degree of autonomy over its operations; whether it has the power to sue and be sued and to enter into contracts; whether its property is immune from state taxation, and whether the sovereign has immunized itself from responsibility for the agency's operations.
>
> Skehan, 815 F.2d at 247.

> While the court analyzed each of these criteria in detail, as noted above, the factor which was 'perhaps the most important is whether ... the payment of the judgment will have to be made out of the state treasury.' The statute establishing the State Universities further provides that 'as successor institutions to the State Normal Schools, appropriations for their operation are ordinary expenses of government, requiring only a majority vote of each House of the General Assembly.' 24 P.S. §§ 20-2002-A(b). In both Skehan and in one of the first federal district cases decided after creation of the SSHE, the courts concluded that although the state universities were authorized to accept funds from 'foundations, corporations, or any other source' (24 P.S. § 20-2010-A(11)), any judgment rendered against any of the universities within the State System of Higher Education 'will result in a drain upon the treasury of Pennsylvania since the state has undertaken primary responsibility for funding these entities.' Wynne, 639 F.Supp. at 80, citing § 20-2002- A(b).

O'Hara, 171 F.Supp.2d at 496-497.

Based on the foregoing analysis, Judge Ambrose then determined "that the State System of Higher Education and its fourteen constituent State Universities, including the Defendant, are entitled to the protection of the Eleventh Amendment in this court." Id., 171 F.Supp.2d at 498; also see at 497 n. 8 (citing additional cases where either the Third Circuit or Pennsylvania's state courts have "conclude[d] that the State System of Higher Education and its fourteen component universities… enjoy immunity under the Eleventh Amendment"). Thus, as another of the "fourteen constituent State Universities," Edinboro University is also "entitled to the protection of the Eleventh Amendment in this court." Id. Accordingly, at least with respect to the state law claims brought under the Pennsylvania Human Relations Act and Pennsylvania's Equal Rights Amendment, and the Fourteenth Amendment equal protection claim, the instant complaint against an arm of the Commonwealth of Pennsylvania must be dismissed.[5]

---

[5] Congress has abrogated the States' Eleventh Amendment immunity with respect to Title VII claims, see ; therefore, no argument for dismissal of this claim is made herein. The States' Eleventh Amendment immunity has not been abrogated with respect to Alvares' other claims.

Additionally, Alvares' Fourteenth Amendment claim may also be dismissed because the University is not a "person" for purposes of Section 1983. Initially, "Section 1983 does not, by its own terms, create substantive rights; it provides only remedies for deprivations of rights established elsewhere in the Constitution or federal laws." Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996)(citing Baker v. McCollan, 443 U.S. 137, 144 n. 3 (1979) and Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995)). See also Kopec v. Tate, 361 F.3d 772, 775 (3rd Cir. 2004). Thus, Alvares' Fourteenth Amendment claim must be viewed as an action brought pursuant to Section 1983.

It is beyond dispute that a Section 1983 claim must necessarily allege that a "person" acting under the color of law caused a deprivation of a right secured by the Constitution. Kneipp v. Tedder, 95 F.3d at 1204. See also Nicini v. Morra, 212 F.3d 798, 806 (3d Cir. 2000). However, the United States Supreme has conclusively determined that a State is not a "person" within the meaning of Section 1983. Will v. Michigan Department of State Police, 491 U.S. 58, 64 (1989). Moreover, this rule has application to "States or governmental entities that are considered 'arms of the State" for Eleventh Amendment purposes." Id., 491 U.S. at 70. Thus, because it has already been shown that the University is an "arm of the state" for Eleventh Amendment purposes, see, e.g., Laskaris v. Thornburgh, 661 F.2d at 25, the University is likewise not a "person" for Section 1983 purposes. Thus, the Fourteenth Amendment equal protection claim can be dismissed for this additional reason.

---

See, e.g., Eaddy v. Pennsylvania Department of Public Welfare Berks County Assistance Office, 2005 WL 1324881, *2 (E.D.Pa. 2005)(plaintiff's "PHRA claims cannot be brought in Federal Court since the Commonwealth's immunity to suit under the PHRA remains intact"); Odenwalt v. Gillis, 327 F.Supp.2d 502, 506 (M.D.Pa. 2004)("§ 1983 does not abrogate the Eleventh Amendment")(citing Quern v. Jordan, 440 U.S. 332, 345 (1979)).

### IV.   Conclusion

WHEREFORE, it is respectfully requested that the instant motion be granted and that Counts I, II, III and IV of the Complaint previously filed in this matter be dismissed.

Respectfully submitted,

THOMAS W. CORBETT, JR.
Attorney General

|  |  |
|---|---|
| Office of Attorney General | s/ Scott A. Bradley |
| 6th Floor, Manor Complex | Scott A. Bradley |
| 564 Forbes Avenue | Senior Deputy Attorney General |
| Pittsburgh, PA 15219 | Attorney I.D. No. 44627 |
| Phone: (412) 565-3586 |  |
| Fax:   (412) 565-3019 | Susan J. Forney |
|  | Chief Deputy Attorney General |

Date:  December 22, 2005